IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ERIC L. WATERS, ED.D., : |   |
|     Plaintiff : |   |
| : | No. 1:17-cv-02201 |
| v. : |   |
| : | (Judge Kane) |
| CHRISTINE WATERS, et al., : |   |
|     Defendants : |   |

**MEMORANDUM**

This matter comes before the Court by way of two motions to dismiss Plaintiff Eric L. Waters' counseled complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, filed by Defendants Nichole Staley O'Gorman and the Staley O'Gorman Family Law Practice (Doc. No. 13), and Christine Waters (Doc. No. 14). For the reasons provided herein, the Court will grant Defendants' motions to dismiss Plaintiff's federal civil rights claims under 42 U.S.C. § 1983 and will decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

**I.  BACKGROUND[1]**

Plaintiff Eric L. Waters, ED.D. ("Plaintiff"), commenced this 42 U.S.C. § 1983 civil rights action on December 1, 2017 by filing a fourteen-count complaint against Christine Waters ("Ms. Waters"), Nichole Staley O'Gorman ("Ms. O'Gorman"), and the Staley O'Gorman Family Law Practice (collectively referred to herein as the "Staley O'Gorman Defendants"). (Doc. No. 1.) In his complaint, Plaintiff alleges, inter alia, that Defendants conspired to deprive him of his constitutionally-protected rights to due process and equal protection under the Fourteenth

---

[1] The following factual allegations comprising this background section are taken directly from Plaintiff's complaint and are accepted as true for purposes of this motion to dismiss. See Schuylkill Energy Res., Inc. v. Pa. Power & Light Co., 113 F.3d 405, 417 (3d Cir. 1997) (explaining that "[w]hen reviewing a Rule 12(b)(6) dismissal, [the court] must accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them").

1

Amendment of the United States Constitution in connection with currently-pending divorce proceedings in the Dauphin County Court of Common Pleas brought against him by his estranged wife, Ms. Waters.

According to the complaint, Plaintiff and Ms. Waters jointly own and operate a daycare center registered under the name ACE Family LLP, "an ongoing business enterprise doing business as AVA's Garden Childcare Center." (Id. ¶ 18.) Pursuant to their partnership agreement, Plaintiff and Ms. Waters "agreed to divide all profits therefrom and did so at all times relevant hereto until 2016." (Id. ¶ 20.) Plaintiff alleges they continued to own and operate the daycare center jointly even after Ms. Waters "abruptly abandoned the marital home" in October of 2015. (Id. ¶¶ 20-21.)

On or about February 12, 2016, Ms. Waters, through the Staley O'Gorman Defendants, filed for divorce from Plaintiff. (Id. ¶ 22.) Shortly thereafter, on February 24, 2016, Ms. Waters "inexplicably [obtained] a protection from abuse (PFA) order against [Plaintiff]," pursuant to which Plaintiff was enjoined from accessing the daycare center six days a week. (Id. ¶ 24.) Notwithstanding the PFA order, Plaintiff was permitted to monitor and co-manage the daycare center's operations remotely and visit the daycare center on Sundays. (Id. ¶ 25.) In March of 2016, Plaintiff discovered that Ms. Waters placed herself on the payroll of ACE Family LLP in the amount of $4,000.00 per month in contravention of the terms of the partnership agreement, which stipulated that the parties would "receive remuneration from the business partnership through their respective profit distributions." (Id. ¶ 26.) Plaintiff alleges that "[b]y placing herself on the business payroll without informing [him], [Ms.] Waters essentially reduced gross monthly profits to [Plaintiff] and improperly assigned those profits to herself as salary." (Id.) Consequently, Plaintiff placed himself on the business payroll with the same salary as Ms.

Waters in order "to ensure the status quo of profit distribution of both parties under the [p]artnership [a]greement." (Id. ¶ 27.)

Plaintiff alleges that, within weeks of placing himself on the payroll, Defendants retaliated against him by filing an Emergency Petition for Special Relief pursuant to Pennsylvania Rule of Civil Procedure 1920.43.[2] (Id. ¶ 28.) The presiding judge granted the Emergency Petition for Special Relief on May 10, 2016.[3] According to Plaintiff, the order granting the Emergency Petition for Special Relief operated as an "immediately enforceable" injunction that conferred "sole day-to-day operational, managerial[,] and financial authority of the business to [Ms.] Waters," and divested him of any and all authority over business operations. (Id.) Plaintiff avers that the court-ordered injunction "infringed upon [his] constitutionally protected due process rights insofar as he was prohibited from exercising any

---

[2] Pennsylvania Rule of Civil Procedure 1920.43, entitled "Special Relief," provides as follows:

(a) At any time after the filing of the complaint, on petition setting forth facts entitling the party to relief, the court may, upon such terms and conditions as it deems just, including the filing of security,

 (1) issue preliminary or special injunctions necessary to prevent the removal, disposition, alienation or encumbering of real or personal property in accordance with Rule 1531(a), (c), (d) and (e); or

 (2) order the seizure or attachment of real or personal property; or

 (3) grant other appropriate relief.

(b) Where property ordered attached is in the possession of a garnishee, the practice and procedure shall conform as nearly as may be to Rules 3111 to 3113 and Rules 3142 to 3145 governing attachment execution. Judgment shall not be entered against a garnishee except by order of the court.

Pa. R. Civ. P. 1920.43.

[3] Plaintiff insists that he was provided with neither adequate notice of the petition nor an opportunity to be heard, which violated his right to due process. (Id. ¶ 29.)

3

authority regarding his business and thus deprived of his liberty and/or property interests without adequate notice or an opportunity to be heard." (Id. ¶ 30.) However, "[n]otwithstanding this extraordinary divestiture of his authority and violation of his constitutional rights, [Plaintiff] still maintained 50% ownership of the [daycare] [c]enter, and was therefore still entitled to his salary and 50% of business profits." (Id. ¶ 31.)

Plaintiff asserts that upon issuance of the injunction, Defendants "invoked the full power and authority derived therefrom to prohibit [Plaintiff] from receiving any of his salary and business profits." (Id. ¶ 32.) Specifically, "[f]or the better part of a year," Plaintiff, through his counsel, "sought access to business financial information/records and profits." (Id. ¶ 36.) Plaintiff, however, "was denied and rebuffed on each occasion with an explanation by Defendants that there w[ere] no business revenues to fund his salary and profits because the [daycare center] operated at a financial loss and therefore had no profits." (Id. ¶ 37.) According to Plaintiff, it was later discovered that Defendants misrepresented the daycare center's finances and profits, and that Ms. Waters "wrote checks to herself from business profits totaling nearly $100,000," precipitating the filing of this lawsuit. (Id. ¶¶ 53-59.)

On February 2, 2018, the Staley O'Gorman Defendants filed a motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6), together with a supporting brief. (Doc. Nos. 12, 13.) That same day, Ms. Waters separately moved to dismiss the complaint under Rule 12(b)(6), filing a brief in support of her motion on March 4, 2018. (Doc. Nos. 14, 19.) Plaintiff filed a brief in opposition to the Staley O'Gorman Defendants' motion to dismiss on March 17, 2018, and a brief in opposition to Ms. Waters' motion to dismiss on April 17, 2018. (Doc. Nos. 26, 30.) Thereafter, Defendants submitted their respective reply briefs. (Doc. Nos. 27, 31.) On June 12, 2018, the Court entered an Order directing the Staley O'Gorman

Defendants and Plaintiff to provide additional briefing on the issue of whether the Court lacked subject matter jurisdiction under Rooker-Feldman[4] and its progeny based on an argument raised for the first time by the Staley O'Gorman Defendants in their reply brief. (Doc. No. 32.) In compliance with that Order, the parties filed their supplemental briefs on June 22, 2018 and June 29, 2018. (Doc. Nos. 33, 34.) Having been fully briefed, this matter is now ripe for disposition.

## II. LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The legal standards governing pleading practice in federal court have shifted to a "more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss." See Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009). To avoid dismissal, all civil complaints must set out "sufficient factual matter" to show that the claim is facially plausible. Id. The plausibility standard requires more than a mere possibility that the defendant is liable for the alleged misconduct. Indeed, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (citing Fed. R. Civ. P. 8(a)(2)). Factual allegations must be enough to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).

The United States Court of Appeals for the Third Circuit has identified the following steps a district court must take when evaluating the sufficiency of a complaint's allegations as tested against a Rule 12(b)(6) motion: (1) identify the elements a plaintiff must plead to state a

---

[4] See Rooker v. Fid. Trust Co., 263 U.S. 413 (1923), and Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).

5

claim; (2) discard any conclusory allegations contained in the complaint "not entitled" to the assumption of truth; and (3) determine whether any "well-pleaded factual allegations" contained in the complaint "plausibly give rise to an entitlement to relief." See Santiago v. Warminster Twp., 629 F.3d 121, 130 (3d Cir. 2010) (citation and quotation marks omitted).

In evaluating whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all factual allegations in the complaint, and construe all reasonable inferences to be drawn therefrom in the light most favorable to the plaintiff. See In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 314 (3d Cir. 2010). A court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss," Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997), and must disregard any "formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. Additionally, a court may not assume that a plaintiff can prove facts that the plaintiff has not alleged. Associated Gen. Contractors of Cal. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983). In deciding a Rule 12(b)(6) motion, the court may consider, in addition to the facts alleged on the face of the complaint, any exhibits attached to the complaint, "any matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006) (citation and quotation marks omitted).

## III. DISCUSSION

### A. APPLICATION OF ROOKER-FELDMAN DOCTRINE AND ITS PROGENY

Before turning to the substance of Defendants' motions to dismiss, the Court must address, as a preliminary matter, Defendants' argument that this Court lacks subject matter jurisdiction over this action pursuant to the Rooker-Feldman doctrine and its progeny. See

6

Nesbit v. Gears Unlimited, Inc., 347 F.3d 72, 76 (3d Cir. 2003) ("[B]ecause subject matter jurisdiction is non-waivable, courts have an independent obligation to satisfy themselves of jurisdiction if it is in doubt."); see also Lance v. Coffman, 549 U.S. 437, 439 (2007) ("Federal courts must determine that they have jurisdiction before proceeding to the merits.").

The Rooker-Feldman doctrine is a doctrine of limited application. It precludes a federal district court from "exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of these judgments.'" Lance v. Dennis, 546 U.S. 459, 460 (2006) (per curiam) (quoting Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005)). The Third Circuit has outlined four prerequisites to the application of Rooker-Feldman: "(1) the federal plaintiff lost in state court; (2) the plaintiff complain[s] of injuries caused by [the] state-court judgments; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff . . . invit[es] the district court to review and reject the state judgments." Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d 159, 166 (3d Cir. 2010) (citation omitted). The second and fourth requirements "are the key to determining whether a federal suit presents an independent, non-barred claim." Id. at 166, 169.

The second requirement of the Rooker-Feldman doctrine –that the plaintiff complain of injuries caused by a state-court judgment – "may . . . be thought of as an inquiry into the source of the plaintiff's injury." Id. In conducting this inquiry, the Court must identify those claims that "profess to complain of injury by a third party, but actually complain of injury 'produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it.'" Id. at 167 (citation omitted). "When the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent," and thus, not foreclosed by Rooker-

7

Feldman, "even if it asks the federal court to deny a legal conclusion reached by the state court." Id. The third requirement–that the federal plaintiff invite the district court to review and reject the state court judgment–is "closely related" to the second requirement. Id. at 168. It "targets . . . whether the plaintiff's claims will require appellate review of state-court decisions by the district court," which the Third Circuit has explained "consists of a review of the proceedings already conducted by the 'lower' tribunal to determine whether it reached its result in accordance with the law." Id. at 169 (citation omitted). Nevertheless, "as long as the 'federal plaintiff present[s] some independent claim,' even if that claim denies a legal conclusion reached by the state court," Rooker-Feldman will not defeat the existence of subject matter jurisdiction. Id.

Here, Plaintiff argues that the "focus of his claims are Defendants' actions pursuant to the state court issued injunction, not the injunction itself." (Doc. No. 33 at 1.) Plaintiff emphasizes that his injuries were caused not by the injunction, but rather, Defendants' "intentional efforts to defraud him of his constitutionally protected property rights and utilizing the injunction to aid them in that purpose." (Id. at 4.) Defendants characterize Plaintiff's complaint as effectively challenging injuries caused by the state court order granting the Emergency Petition for Special Relief. (Doc. No. 34.)

Insofar as Plaintiff seeks to recover damages for injuries caused by Defendants' actions, rather than those resulting from any state court order, Plaintiff is correct that this Court is not necessarily stripped of subject-matter jurisdiction over those claims. Indeed, allegations that Defendants deprived Plaintiff of his right to due process by employing the state-court issued injunction in a manner so as to effectuate certain improper objectives give rise to an independent constitutional challenge that does not require scrutiny and invalidation by this Court of any individual state court judgment. See Ludwig v. Berks Cty., Pa., 313 F. App'x 479, 481 (3d Cir.

2008).  However, as demonstrated by a fair reading of the complaint's allegations, the source and nature of Plaintiff's alleged injuries are not limited to any purported act of misconduct on the part of Defendants.  In his complaint, Plaintiff alleges that the order granting the Emergency Petition for Special Relief "infringed upon [his] constitutionally protected due process rights insofar as he was prohibited from exercising any authority regarding his business and thus deprived of his liberty and/or property interests without adequate notice or an opportunity to be heard." (Doc. No. 1 ¶ 30.)  To redress this alleged constitutional violation, Plaintiff requests "[p]rospective injunctive relief in the form of reinstatement of [his] financial, managerial[,] and operational authority." (Id. at 21.)  It is apparent from these allegations that Plaintiff complains, at minimum, of an injury caused by the state-court judgment itself, akin to the following example, which the Third Circuit concluded was "barred by Rooker-Feldman because the state-court judgment itself [is] the source of the injury":

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal.

Great W. Mining & Mineral Co. v. Fox Rothschild LLP, 615 F.3d at 166 (citation omitted). Accordingly, insofar as Plaintiff asserts injury caused by the state-court judgment itself and invites the Court to engage in the prohibited exercise of appellate jurisdiction, the Court lacks jurisdiction over these claims.

      B.    CLAIMS BROUGHT UNDER 42 U.S.C. § 1983

Insofar as the 42 U.S.C. § 1983 civil rights claims asserted in Counts I, II, III, IV, XIV, and XV complaint are not barred from review based on the application of Rooker-Feldman, these claims are nevertheless subject to dismissal for lack of state action.

Section 1983 affords a private citizen redress for violations of federal constitutional law committed by state officials. See 42 U.S.C. § 1983. The statute states, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Id. "Section 1983 is not a source of substantive rights," but rather, is merely a means "to vindicate violations of federal law committed by state actors." Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002)). To maintain a cause of action under Section 1983, a plaintiff must demonstrate that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. See Harvey v. Plains Twp. Police Dep't, 421 F.3d 185, 189 (3d Cir. 2005) (quoting West v. Atkins, 487 U.S. 42, 48 (1988)).

The "under color of state law" requirement excludes from its reach "merely private conduct, no matter how discriminatory or wrongful." Blum v. Yaretsky, 457 U.S. 991, 1002 (1982). Liability under Section 1983 may attach to a private actor only if the challenged conduct is "fairy attributable to the [S]tate." Lugar v. Edmondson Oil Co., 457 U.S. 922, 937 (1982). Whether an action may be fairly attributable to the State "is a matter of normative judgment, and the criteria lack rigid simplicity." Brentwood Academy, 531 U.S. at 295. The Supreme Court of the United States has adopted a flexible, fact-specific approach with regard to determining whether state action exists for purposes of Section 1983. See Groman v. Twp. of Manalapan, 47 F.3d 628, 638 (3d Cir. 1995) ("The inquiry is fact-specific."). Supreme Court jurisprudence,

however, has yielded three discrete tests to determine the existence of state action. The first test asks "whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state." Blum, 457 U.S. at 1004-05. The second inquiry asks whether "the private party has acted with the help of or in concert with state officials." McKeesport Hosp.v. Accreditation Council for Graduate Med. Ed., 24 F.3d 519, 524 (3d Cir. 1994). Finally, "the third scenario involves situations in which 'the [s]tate has so far insinuated itself into a position of interdependence with . . . [the acting party] that it must be recognized as a joint participant in the challenged activity.'" Mark v. Borough of Hatboro, 51 F.3d 1137, 1142 (3d Cir. 1995) (citations omitted).

Here, Defendants argue in support of their motions to dismiss that the Section 1983 claims brought in Counts I, II, III, IV, XIV, and XV of the complaint cannot survival dismissal because the complaint lacks plausible factual allegations of state action sufficient to subject these private actors to Section 1983 liability. In response, Plaintiff acknowledges that Defendants are private actors, but maintains that the state action requirement is met because, as "the complaint sufficiently alleges that [the Staley O'Gorman Defendants] conspired with [Ms.] Waters . . . to obtain and execute upon an immediately enforceable injunction for the purpose of violating [Plaintiff's] . . . [d]ue [p]rocess and [e]qual [p]rotection rights in order to extract and transfer his profits to [Ms.] Waters . . . and/or themselves as fees." (Doc. No. 26 at 17.) Relying exclusively on the United States Court of Appeals for the Fifth Circuit's decision in Henry v. First National Bank of Clarksdale, 595 F.2d 291, 299 (5th Cir. 1979), Plaintiff argues that a private actor may be deemed a state actor and subjected to liability under Section 1983 simply by obtaining an immediately-enforceable state court judgment.

11

The Court finds Plaintiff's sweeping theory of state action, which is premised on a private actor's mere availment of state court process to obtain an immediately enforceable judgment, problematic and unavailing. It is well established, in the context of Section 1983 civil rights litigations, that "one who has obtained a state court order or judgment is not engaged in state action merely because [he] used the state court legal process." See Cobb v. Ga. Power Co., 757 F.2d 1248, 1251 (11th Cir. 1985). Accordingly, Plaintiff's citation to non-binding authority to support a finding of state action based on the use of state court process is of no moment.

Indeed, Henry was borne out of a "strongly contested Mississippi civil rights case" involving a state court injunction that, inter alia, enjoined a number of civil rights organizations and its members, including the NAACP, from boycotting, picketing, or otherwise protesting racial discrimination practiced by certain local officials and resident citizens with business establishments in Port Gibson, Mississippi. See Henry 595 F.2d at 294. In conjunction with its award of injunctive relief, the state court had also directed the payment of damages from NAACP funds subject to writs of attachment in chancery to the state court plaintiffs. Id. at 295. The state court defendants then sought relief in federal court. On appeal, the Fifth Circuit affirmed three orders issued by the federal district court preliminarily enjoining the successful state court plaintiffs from enforcing the state court's injunction and damage award. Id. at 297. In so deciding, the Fifth Circuit rejected the state court plaintiffs' argument that the district court lacked subject matter jurisdiction over the constitutional claims underlying the preliminary injunction and found that the requisite state action under Section 1983 was supplied by the entry of the state court's judgment, which was immediately enforceable. Id. at 299. Specifically, the Fifth Circuit reasoned as follows:

> The crucial difference between a private party who has merely filed a civil suit in a state forum and the successful litigant who possesses an immediately

12

> enforceable state judgment is that in the latter case the full power and authority of the state can be invoked on behalf of the litigant. It is this exercise of state power that provides state action for purposes of the Fourteenth Amendment and [S]ection 1983.

Id. Plaintiff relies on this reasoning to support his theory that Defendants acted under color of state law by obtaining the state-court injunction.

In the Court's view, Henry presents the "quintessential hard-facts-make-bad-law case," and therefore, the Court has no difficulty concluding that its holding as to state action does not apply here. See Tahfs v. Proctor, 316 F.3d 584, 592 (6th Cir. 2003) ("After carefully studying Henry, we are satisfied that it is the quintessential hard-facts-make-bad-law case, and we decline to adopt its reasoning or conclusion."). The Court's finding reflects a "[c]areful adherence to the 'state action requirement,'" which is ultimately concerned with "avoi[ding] the imposition of responsibility on a state for conduct it could not control." Nat'l Collegiate Athletic Ass'n v. Tarkanian, 488 U.S. 179, 191 (1988) (quoting Lugar, 457 U.S. at 936-37). Indeed, the mere fact that Defendants were able to secure an immediately-enforceable injunction does not render the state responsible for the specific conduct of which Plaintiff complains under any of the various tests employed by the Supreme Court for determining the existence of state action.

Moreover, as a point of emphasis, Plaintiff cannot claim that the issuance of the state court injunction constitutes state action for purposes of maintaining a cause of action under Section 1983 while simultaneously disclaiming any notion that the state court injunction was ever the source of his injuries so as to avoid the application of the Rooker-Feldman doctrine. To be sure, in his supplemental brief addressing whether the Court may retain subject-matter jurisdiction over this action under the Rooker-Feldman doctrine, Plaintiff represents as follows:

> [Plaintiff's] federal and state claims are independent of the injunction and solely based upon the constitutional deprivations he suffered by Defendants' independent actions pursuant thereto . . . . [A]s said claims are premised upon the fact that Defendants' unconstitutional actions exceeded the scope of the

13

> injunction's grant of authority and were not compelled thereby, this court need not reject the injunction at all to afford [Plaintiff] relief. The injunction did not authorize or compel Defendants to limit or inhibit [Plaintiff's] authority to access financial information pertaining to his salary and profits. Similarly, the injunction did not authorize or compel Defendants to withhold, steal and convert [Plaintiff's] salary and profits for their own purposes. Moreover, the injunction did not authorize or compel Defendants to conceal their actions from [Plaintiff] or the issuing state court judge to avoid detection of their wrongful and unlawful activities.

(Doc. No. 33 at 8-9.)

In paradoxical fashion, Plaintiff argues that Defendants violated his right to due process and equal protection under the Fourteenth Amendment through actions taken independent of, and in contravention to, the state court injunction, while maintaining in his opposition brief that Defendants effectively invoked the "full power and authority of the state" through the procurement of a state court injunction that was improperly executed to effectuate Defendants' own unlawful objectives. Plaintiff's position that the "state . . . placed its weight behind a position adverse to the . . . [P]laintiff's federal rights in the form of an 'immediately enforceable' state court judgment," however, is belied by his assertion that Defendants "acted beyond the scope of their authority [granted by the state court injunction] and engaged in constitutionally infirm conduct that was not compelled by the injunction." (Id. at 10.) It cannot be said that these private actors were cloaked with the authority of the State in causing the alleged constitutional deprivation where the gravamen of Plaintiff's complaint is that these private actors flouted the terms of the injunction, which resulted in the alleged constitutional violations giving rise to this action.

Accordingly, the Court will grant Defendants' motions to dismiss Counts I, II, III, IV, XIV, and XV of the complaint for failure to state a cognizable cause of action under Section 1983.

14

C.     LEAVE TO AMEND

In civil rights cases, district courts must generally sua sponte extend plaintiffs an opportunity to amend the complaint before dismissal. Fletcher-Harlee Corp. v. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007). However, a district court can refuse to permit a curative amendment on grounds of bad faith, undue delay, prejudice, or futility. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Informed by this standard governing the amendment of pleadings, the Court finds that granting leave to amend Counts I through IV, XIV, and XV of the complaint would be futile. Indeed, a liberal reading of the complaint reveals no set of facts that could plausibly give rise to a viable claim for relief under Section 1983, even if further amendment were permitted. Accordingly, the Court will grant Defendants' motions to dismiss Counts I, II, III, IV, XIV, and XV of the complaint with prejudice.

D.     STATE LAW CLAIMS

The remaining counts asserted in Plaintiff's complaint contain state law claims. (Doc. No. 1) Where a district court has dismissed all claims over which it has original jurisdiction, as is the case here, the Court may decline to exercise supplemental jurisdiction over the pendent state law claims. 28 U.S.C. § 1367(c)(3). The question of whether the Court may exercise supplemental jurisdiction is based on "the values of judicial economy, convenience, fairness, and comity." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988). Ordinarily, when all federal law claims have been dismissed and only state-law claims remain, the balance of these factors indicates that these remaining claims properly belong in state court. Id. In the absence of a viable federal claim, and finding nothing in the record to distinguish this case from an ordinary one, the Court finds that the balance of factors in this case "point[s] toward declining to exercise jurisdiction over the remaining state law claims." See Cohill, 484 U.S. at 350 n.7. Therefore, the

15

Court will dismiss the state-law claims asserted in Counts V, VI, VII, VIII, IX, X, XI, XII, XIII, and XVI without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

Based upon the foregoing, the Court will grant Defendants' motions to dismiss Plaintiff's federal civil rights claims under 42 U.S.C. § 1983 (Doc. Nos. 12, 14), and will decline to exercise supplemental jurisdiction over Plaintiff's state law claims. An appropriate Order follows.